UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

DAVID L.,

                      Plaintiff,

v.                                                   1:19-CV-0227
                                                           (WBC)
COMMISSIONER OF SOCIAL SECURITY,

                      Defendant.
_____

| APPEARANCES: | OF COUNSEL: |
|---|---|
| LAW OFFICES OF KENNETH HILLER, PLLC<br>  Counsel for Plaintiff<br>6000 North Bailey Ave, Ste. 1A<br>Amherst, NY 14226 | KENNETH HILLER, ESQ.<br>BRANDI SMITH, ESQ.<br>LEWIS SCHWARTZ, ESQ. |
| U.S. SOCIAL SECURITY ADMIN.<br>OFFICE OF REG'L GEN. COUNSEL – REGION II<br>  Counsel for Defendant<br>26 Federal Plaza – Room 3904<br>New York, NY 10278 | AREILLA ZOLTAN, ESQ.<br>MICHELLE CHRIST, ESQ. |

William B. Mitchell Carter, U.S. Magistrate Judge,

## MEMORANDUM-DECISION and ORDER

      The parties consented, in accordance with a Standing Order, to proceed before the undersigned. (Dkt. No. 15.) The court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g). The matter is presently before the court on the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons discussed below, Plaintiff's motion is denied, and the Commissioner's motion is granted.

**I.    RELEVANT BACKGROUND**

### A. Factual Background

Plaintiff was born in 1953. (T. 375.) He completed high school. (T. 380.) Generally, Plaintiff's alleged disability consists of anxiety, depression, and agoraphobia. (T. 379.) His alleged disability onset date is October 1, 2008. (T. 375.) His date last insured is December 31, 2013. (*Id*.) His past relevant work consists of hotel clerk/front desk, van driver, and cashier. (T. 27, 380.)

### B. Procedural History

On July 20, 2012, Plaintiff applied for a period of Disability Insurance Benefits ("SSD") under Title II, and Supplemental Security Income ("SSI") under Title XVI, of the Social Security Act. (T. 173.) Plaintiff's applications were initially denied, after which he timely requested a hearing before an Administrative Law Judge ("the ALJ"). On May 12, 2014, Plaintiff appeared before the ALJ, William M. Weir. (T. 67-115.) On December 1, 2014, ALJ Weir issued a written decision finding Plaintiff not disabled under the Social Security Act. (T. 175-192.) On June 15, 2016, the AC granted Plaintiff's request for review, remanding Plaintiff's case to the ALJ. (T. 193-197.) On December 11, 2017, the ALJ again appeared before ALJ Weir. (T. 116-151.) On March 22, 2018 ALJ Weir issued a written decision finding Plaintiff not disabled under the Social Security Act. (T. 13-36.) On December 28, 2018 the AC denied Plaintiff's request for review rendering the ALJ's 2018 decision the final decision of the Commissioner. Thereafter, Plaintiff timely sought judicial review in this Court.

### C. The ALJ's Decision

Generally, in his decision, the ALJ made the following five findings of fact and conclusions of law. (T. 19-29.) First, the ALJ found Plaintiff met the insured status

2

requirements through December 31, 2013 and Plaintiff had not engaged in substantial gainful activity since October 1, 2008.  (T. 20.)  Second, the ALJ found Plaintiff had the severe impairments of anxiety disorder and major depressive disorder.  (*Id*.)  Third, the ALJ found Plaintiff did not have an impairment that meets or medically equals one of the listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix. 1.  (*Id*.)  Fourth, the ALJ found Plaintiff had the residual functional capacity ("RFC") to perform: medium work, as defined in 20 C.F.R. §§ 404.1567(c) and 416.967(c); except, Plaintiff "can perform simple, repetitive one and two step tasks with no complex work (multiple simultaneous goals or objectives or the need to independently set quantity, quality or method standards)."  (T. 22.)  The ALJ further found Plaintiff could change job tasks or work settings no more than one time per day and could have occasional social contact.  (*Id*.)  Fifth, the ALJ determined Plaintiff unable to perform past relevant work; however, there were jobs that existed in significant numbers in the national economy Plaintiff could perform.  (T. 27-28.)

## II. THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A. Plaintiff's Arguments

Plaintiff makes one argument in support of his motion for judgment on the pleadings.  Plaintiff argues the ALJ failed to properly evaluate the joint opinion of treating nurse practitioner Marlene Longdon and licensed social worker Natalie Bucholtz. (Dkt. No. 12 at 11-17.)  Plaintiff also filed a reply in which he deemed no reply necessary.  (Dkt. No. 16.)

### B. Defendant's Arguments

In response, Defendant makes one argument. Defendant argues the ALJ properly considered the medical opinions in the record and the RFC finding was supported by substantial evidence. (Dkt. No. 14 at 7-21.)

## III. RELEVANT LEGAL STANDARD

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]."  *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).  In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review."  *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B.   Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act.  *See* 20 C.F.R. §§ 404.1520, 416.920.  The Supreme Court has recognized the validity of this sequential evaluation process.  *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987).  The five-step process is as follows:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a 'residual functional capacity' assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014).

## IV.   ANALYSIS

Plaintiff argues the ALJ erred in his evaluation and weighing of the joint medical opinion provided by treating sources, NP Longdon and LMSW Bucholtz. (Dkt. No. 12 at 11-17.) Plaintiff argues the ALJ failed to recognize the opinion was completed by both NP Longdon and LMSW Bucholtz and the ALJ's reasons for "rejecting" the opinion were unsupported. (*Id*.)

In general, social workers and nurse practitioners are not acceptable medical sources whose opinions are eligible for controlling weight. *See* 20 C.F.R. §§ 404.1513(a)-(d), 416.913(a)-(d)[1]. "Nevertheless, an ALJ should consider evidence from other sources, [. . .] on important issues like the severity of an impairment and any related functional effects." *Wynn v. Comm'r of Soc. Sec.*, 342 F. Supp. 3d 340, 345-346 (W.D.N.Y. 2018). An ALJ may not disregard opinion evidence from an "other source" solely because it was not authored by an acceptable medical source. *See Canales v. Comm'r of Soc. Sec.*, 698 F.Supp.2d 335, 344 (E.D.N.Y. 2010) (holding that ALJ erred in disregarding opinion of social worker simply because it was the opinion of an "other

---

[1] At the time Plaintiff filed his applications, the regulations identified five categories of "acceptable medical sources." 20 C.F.R. §§ 404.1513(a), 416.913(a). Social workers and nurse practitioners were not included within those categories. On January 18, 2017, the agency published final rules titled "Revisions to Rules Regarding the Evaluation of Medical Evidence." 82 Fed. Reg. 5844. These final rules were effective as of March 27, 2017. Some of the new final rules state that they apply only to applications/claims filed before March 27, 2017, or only to applications/claims filed on or after March 27, 2017. *See, e.g.*, 20 C.F.R. §§ 404.1527, 416.927 (explaining how an adjudicator considers medical opinions for claims filed before March 27, 2017) and 20 C.F.R. §§ 404.1520c, 416.920c (explaining how an adjudicator considers medical opinions for claims filed on or after March 27, 2017); *see also* Notice of Proposed Rulemaking, 81 Fed. Reg. 62560, 62578 (Sept. 9, 2016) (summarizing proposed implementation process). Here, Plaintiff filed his claim before March 27, 2017. Thus, the 2017 revisions apply to this case, except for those rules that state they apply only to applications/claims filed on or after March 27, 2017.

source," and "not on account of its content or whether it conformed with the other evidence in the record").

The relevant factors considered in determining what weight to afford an opinion include the length, nature and extent of the treatment relationship, relevant evidence which supports the opinion, the consistency of the opinion with the record as a whole, and the specialization (if any) of the opinion's source.  20 C.F.R. §§ 404.1527(c)(1)-(6), 416.927(c)(1)-(6).

In June 2016, Plaintiff's treating mental health providers NP Longdon and LMSW Bucholtz completed a "Mental Impairment Questionnaire (Listings)" form.  (T. 906-909.) When asked to indicate Plaintiff's level of functional limitations, the providers indicated he had "marked," defined as more than moderate but less than extreme, restrictions in activities of daily living.  (T. 908.)  They indicated Plaintiff had "extreme" limitations in maintaining social functioning and "moderate" limitations in concentration, persistence, or pace.  (*Id*.)  The providers also indicated Plaintiff had three repeated episodes of decompensation within a twelve-month period each lasting at least two weeks.  (*Id*.) When asked how many days per month Plaintiff would be absent due to his impairments, the providers checked, "more than four days per month."  (T. 909.)  The providers stated Plaintiff had "extreme difficulty in leaving the home[,] he can no longer provide his own transportation[,] when entering buildings, structures, or unfamiliar places [Plaintiff] begins to panic."  (*Id*.)  When asked to indicate Plaintiff's prognosis, the providers wrote, "[Plaintiff] engages in counseling appropriately.  However does not see it likely that he would be able to return to work."  (T. 906.)

The ALJ afforded the June 2016 statement "little weight." (T. 32.) In affording the opinion weight, the ALJ considered LCSW Bucholtz status as an "other medical source." (*Id*.) The ALJ also concluded statements of whether an individual can work are reserved to the Commissioner. (*Id*.) The ALJ determined the opined limitations were not consistent with treatment notations showing "grossly normal mental status findings" and did not "reflect repeated episodes of decompensation of extended duration." (*Id*.) The ALJ concluded the opined limitations due to Plaintiff's agoraphobia were not consistent with Plaintiff's testimony of activities of daily living. (*Id*.) Lastly, the ALJ concluded the opinion was internally inconsistent because the Global Assessment of Functioning ("GAF") scores indicated moderate difficulties. (*Id*.)

First, Plaintiff argues the ALJ "failed to consider relevant factors set forth in the regulations" in evaluating the June 2016 statement. (Dkt. No. 12 at 14-15.) In accordance with the regulations, the ALJ concluded the limitations provided in the statement were not consistent with other evidence in the record. (T. 32); *see* 20 C.F.R. §§ 404.1527(c)(1)-(6), 416.927(c)(1)-(6). Further, the ALJ discussed the opinion with Plaintiff and his counsel at the hearing, and Plaintiff's counsel noted that the opinion was provided by Plaintiff's treating sources. (T. 119-120.) Where an ALJ's reasoning and adherence to the regulations is clear, he is not required to explicitly go through each and every factor of the regulation. *Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013). Therefore, the ALJ did not fail to consider relevant factors in assessing the June 2016 statement.

Second, Plaintiff argues the ALJ erred in his assessment of the June 2016 statement because the ALJ failed to acknowledge the statement was also signed by NP

8

Longdon.  (Dkt. No. 12 at 14-15.)  Plaintiff asserts this error raised questions about whether the ALJ considered treatment records of both providers in evaluating the opinion.  (*Id.*)  Any error to specifically name NP Longdon in his written analysis of the June 2016 statement was harmless.  Although the ALJ stated in his written decision the statement was provided by LCSW Bucholtz, he noted at the hearing that the opinion was also provided by NP Longdon.  (T. 119-120.)  In addition, the record shows the ALJ was aware of LCSW Bucholtz's and NP Longdon's treating relationship with Plaintiff, as he cited to numerous treatment notes from both providers. (*See* T. 24-25 *citing* Tr. 713, 718-19, 722, 753-760, 899, 902-905 (notes from NP Longdon), T. 797-798, 800-814, 826-827 (notes from LCSW Bucholtz)); *see Meyer v. Comm'r of Soc. Sec.*, 794 F. App'x 23, 26 (2d Cir. 2019) (finding detailed discussion of treatment history and records constituted consideration of treatment relationship factor).  Therefore, although the ALJ did not specifically name NP Longdon as a co-signer of the June 2016 statement, the hearing transcript and written decision supported the conclusion that the ALJ was aware she signed the statement and also that he considered her treatment notations.

Third, Plaintiff argues the ALJ erred in concluding NP Longdon and LCSW Bucholtz opined on an issue reserved to the Commissioner.  (Dkt. No. 12 at 15.)  To be sure, the June statement assessed specific function-by-function work-related limitations; however, it also included a conclusory statement that Plaintiff would likely not be able to return to work.  (T. 906.)  Therefore, the ALJ properly concluded the statement was not entitled to consideration.  *See* 20 C.F.R. §§ 404.1527(d)(1); 416.927(d)(1) (statements that a claimant is "disabled" or "unable to work" are opinions on issues reserved to the

Commissioner, and will be given no weight). Moreover, the ALJ did not discount the entire opinion purely on this basis. (T. 24-25.)

Fourth, Plaintiff argues the ALJ failed to cite to any records as support or explain what findings in the record were inconsistent with the limitations provided in the statement. (Dkt. No. 12 at 15-16.) To be sure, in his discussion of the June 2016 statement the ALJ did not cite specific evidence in the record of inconsistencies; however, the ALJ's reasoning can be easily gleaned from the record. *See Cichocki v. Astrue*, 729 F.3d 172, 178 n.3 (2d Cir. 2013) (quoting *Mongeur v. Heckler,* 722 F.2d 1033, 1040 (2d Cir.1983)) ("An ALJ is not required to discuss in depth every piece of evidence contained in the record, so long [as] the evidence of record permits the Court to glean the rationale of an ALJ's decision.").

Here, a review of the ALJ's decision shows he cited evidence to support his conclusion that the opined limitations were not supported by other evidence in the record. (T. 24-25.) Indeed, the ALJ provided specific citation to notations indicating Plaintiff was able to attend concerts and trivia nights and interact with a neighbor. (T. 133-136, 138.) The ALJ also cited mental status examination during which providers observed Plaintiff as being pleasant and cooperative, with intact/good memory and concentration. (T. 690, 708, 713, 718-19, 722, 753-760, 899, 902-905.) Therefore, although the ALJ did not cite to specific evidence in his discussion of the June 2018 statement, the ALJ's reasoning can be easily gleaned from his decision.

Fifth, Plaintiff argues "the mere fact that Plaintiff engaged in some social activities does not undermine the opinion findings." (Dkt. No. 12 at 16.) The ALJ properly considered Plaintiff's testimony he had difficulty performing certain activities, but

considered this testimony in light of the record as a whole.  *See Medina v. Comm'r of Soc. Sec.*, 831 F. App'x 35, 36 (2d Cir. 2020) (the ALJ properly weighed opinion of treating physician concluding limitations provided were inconsistent with doctor's own treatment notes and plaintiff's self-report of her activities of daily living).  For example, the ALJ noted Plaintiff's testimony that he was "on the edge of panic" when he attended a concert but contrasted this testimony with Plaintiff's report to LCSW Bucholtz that he had enjoyed the concert.  (T. 24, 873.)  The ALJ also noted Plaintiff attended more than one concert during the relevant period, suggesting that he was not "on the edge of panic" when attending concerts.  (T. 24, 135-136.)  Therefore, the ALJ properly considered the entire record in assessing Plaintiff's activities.

Finally, Plaintiff argues the ALJ erred by noting that LCSW Bucholtz's and NP Longdon's GAF scores were inconsistent with their assessed limitations.  (Dkt. No. 12 at 16.)  Specifically, LCSW Bucholtz and NP Longdon assessed a current GAF score of 50 and noted Plaintiff's highest GAF score in the past year was 55.  (T. 906.)  Plaintiff argues that the ALJ impermissibly relied upon the GAF scores while simultaneously noting the unreliability of GAF scores generally.  (Dkt. No. 12 at 16.)  To be sure, GAF scores to not provide "good reason" to afford less than controlling weight to a treating source's opinion where the "GAF scores were bereft of any explanation" of the providing source's reasoning and unsupported by the source's other conclusions as to the severity of a plaintiff's depression.  *Estrella v. Berryhill*, 925 F.3d 90, 97-98 (2d Cir. 2019).

Here, the form completed by the providers specifically asked for GAF scores; therefore, the ALJ was within his discretion to consider evidence provided.  In addition,

11

any error in considering the GAF scores provided on the form would be harmless error. The ALJ did not reject the limitations provided by sources based on the GAF scores alone. The ALJ provided other reasoning to support his weight determination and substantial evidence in the record support his conclusion.

Overall, the ALJ properly assessed the statement provided by Plaintiff's treating non-acceptable medical providers. The ALJ evaluated the opinions and limitations provided in the form according to the regulations and his determination was supported by substantial evidence in the record. The Court cannot set aside the Commissioner's disability determination unless it finds that the decision is based on either legal error or factual findings that are unsupported by substantial evidence. The "substantial evidence" standard "means - and means only - such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). "[I]t is . . . a very deferential standard of review - even more so than the 'clearly erroneous' standard." *Brault v. Soc. Sec. Admin.*, 683 F.3d 443, 448 (2d Cir. 2012). In particular, it requires deference "to the Commissioner's resolution of conflicting evidence." *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012).

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 12) is **DENIED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 14) is **GRANTED**; and it is further

**ORDERED** that Defendant's unfavorable determination is **AFFIRMED**; and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **<u>DISMISSED</u>**.

Dated:      May 20, 2021

_____
William B. Mitchell Carter
U.S. Magistrate Judge